This is 4-13-0328, People's State of Illinois v. Williams-Zabriskie. Attorney Skelnick is here on behalf of the appellant, and Attorney Miller is here on behalf of the appellee. Ms. Skelnick, are you ready to proceed? Okay, you may do so. Good afternoon, your honors, counsel. May it please the court, my name is Josette Skelnick. I'm here from the Elgin office of the State Appellate Defender on behalf of Cody Zabriskie. William or Cody, he goes by Cody. Mr. Zabriskie was convicted of the offense of methamphetamine conspiracy based upon the underlying offense of methamphetamine trafficking. In order to be convicted of the offense of methamphetamine conspiracy based on methamphetamine trafficking, the state was required to prove that Mr. Zabriskie or Mr. Colliver, who was the co-defendant, brought into the state of Illinois the anhydrous ammonia that was found in Mr. Colliver's car. In this case, the only evidence the state really relied on in the trial court to establish that was Mr. Colliver's guilty plea, Caleb Colliver. And with that in mind, I'd like to address the two cases that your honors asked that the parties be prepared to address. It's People v. Sullivan, which is a 1978 Illinois Supreme Court case, and People v. Duff, a First District 2007 case, which both state as a general principle that the state might not use a co-defendant's guilty plea as evidence of the defendant's guilt. That's exactly what the prosecutor did in this case, by arguing that Mr. Colliver's guilty plea should be used as evidence that the anhydrous ammonia in question was brought into Illinois from Missouri. What discussion occurred at the trial level about the admissibility of the co-defendant's guilty plea for any purpose? Well, they used a very, what I thought was a very odd procedure, at the close of the state's case, and the prosecutor, apparently Inspector Pickett had spoken to Caleb Colliver two days before the trial, and the state realized at that time that Mr. Colliver was insisting that he did not bring this ammonia into the state of Illinois from Missouri, that he said he got it in Marblehead, Illinois. So the state recognized by the end of its case that they were going to have a problem proving that element. So they gave the trial judge the file from Mr. Colliver's guilty plea, and asked the trial judge to take judicial notice of the file. Defense counsel said he didn't think that the guilty plea itself could be used as evidence, but if the state wanted to use it for the limited purpose of showing that the ammonia came into the state of Illinois from the state of Missouri, he wouldn't object for that purpose. This was the, the jury, I don't know. Why isn't that an effective assistance of counsel? Well, I think it is, but. Did you raise it on appeal? No, because I'm raising it as a reasonable doubt that there was just no evidence of that element, because the jury never heard anything about what was in that file. I don't know what's in the file. There are. Well, this is a jury trial. This is a jury trial, right. So how does the state ask the court to take judicial notice of something, leaving aside what it is for the moment, but not tell the jury about it? Well, I. What is that about? I agree. It didn't, it effectively didn't do anything. The jury didn't have any evidence of the ammonia being brought in from out of state. So, which is exactly why we're asking that the conviction be reversed, because they never proved it. I recognize now that since Sullivan, there's, I'm sorry, there's been some kind of change in the law with respect to using prior inconsistent statements under 115.10.1. And in fact, in shepherdizing, I don't know if shepherdizing is still the right word, I'm showing my age, but when I was looking at cases citing Sullivan, there is a case from this court from 1999, and I can give your honors the case. What is it? It's People v. Edwards, which is 309, ILF 3rd, 447, where they reaffirm that you can't use the bare fact of a co-defendant's guilty plea as evidence of the defendant's guilt, but you can bring in statements that qualify under 115.10.1 as prior inconsistent statements. What was the cite? 309, ILF 3rd, what? 309, ILF 3rd, 447. It's from 1999. Well, that would be a case, I suspect, where the defendant at the guilty plea hearing made statements. That was a case where the co-defendant at the defendant's trial, I think it was a home invasion charge, the co-defendant was put on the stand by the state, and as often happens, the co-defendant said he didn't remember what happened, he didn't know who was involved, and they brought in his statements on the record under oath at his sentencing hearing and his guilty plea saying, yes, I committed a home invasion, and so on. The distinction I'm drawing here is whether statements were made by that person, who happened to be the co-defendant, as opposed to the mere fact that someone pled guilty. Right, and that's exactly what was happening in that case. Statements were made in that case, whereas in this case, the court was asked to take additional notice, whatever that means, of just the guilty plea, wasn't it? Right. The only thing that was brought up... So these circumstances would be exactly what Sullivan and Duff talked about, that you can't redo it. Correct. The only thing that was brought up by the prosecutor during his cross-examination of Caleb Colliver was, didn't you plead guilty to a charge that said that you traveled from the state of Missouri to the state of Illinois to deliver ammonia? And he said, yes, I did, but nobody was questioning that he traveled from the state of Missouri to the state of Illinois. I mean, Mr. Zabriskie and Mr. Colliver both traveled from the state of Missouri to the state of Illinois. No objection was made to the question? I don't believe so, no. I also, I have to say, in reviewing my notes, the prosecutor did use this during closing argument in saying there's one big problem with Mr. Colliver's testimony, that he got it in Illinois and that's that he pled guilty. So he used it for this improper purpose. He also used the guilty plea again shortly after that to say Mr. Colliver had pled guilty to a conspiracy which requires an agreement and who do you think this agreement was with if not the defendant, which is very much like the... He's arguing the substance of use of the guilty plea? Right, right. And so absent any evidence of any statements made by Mr. Colliver at his guilty plea that could be used to show where this ammonia came from, all we have is his testimony at the trial that he got this ammonia from a farm outside of Marblehead, Illinois. And I have to say, looking at the evidence that was brought out at trial, it's also, it corroborates this claim. First of all, we had Master Sergeant Fraser saying he agrees, well, there's a lot of farmer's co-ops in Adams County, farmers use anhydrous ammonia. Mr. Colliver said he saw the tank sitting in a field, he drew the five gallons of ammonia out of that. It's also interesting that there was evidence that Caleb Colliver called the confidential informant, Justin Cole, and told him I'm about 15 minutes away from your place, I'll be there with the ammonia, which is consistent also with the fact that Marblehead is about 15 minutes from Quincy. So, it supports his testimony that I was there, I decided I'd make a quick buck. And finally... How far is Hannibal from Quincy? It's about twice as far, I think, as from Marblehead. Also, if we credit the officer's testimony about the smell of the anhydrous ammonia, according to the officers, the windows were all rolled up, the anhydrous ammonia has a very pungent odor, it's dangerous to smell, and it's kind of hard to believe that anybody could be in that car for any period of time, let alone from the time it would take to go from Missouri to Illinois. So, we would be asking, based on the lack of any evidence, any competent evidence, that this ammonia came from Missouri, that Mr. Zabriskie's conviction be reversed. I'd like to make a couple comments also on the ineffective assistance count. The state argues that, and then argued in the trial court, that they had to show that Mr. Zabriskie had knowledge, and they used various evidence to show he had knowledge. I think most significantly the fact that there was a smell of ammonia in the car. And they did have to show knowledge to show a conspiracy, but knowledge was not enough. They had to show an agreement, they had to show his intent to commit methamphetamine trafficking, they had to show what offense he was trying to commit. So, much of the evidence that was introduced to show both knowledge and intent was evidence that was not admissible, but was not objected to, or was belatedly objected to, by defense counsel. First, there was evidence brought out, there was a lot of evidence brought out about ENPLEX initially, and I wasn't sure why all this evidence was brought out. About what? It's called ENPLEX. It's a database by, it might be a federal database, by law enforcement. It's in, I believe, Master Sergeant Fraser's testimony that it's a database of people who are purchasing pseudoephedrine, and they keep a watch list on them because these are people who are likely to be using pseudoephedrine to either use or manufacture methamphetamine. Without objection, Inspector Pickett, I think it was Inspector Pickett was allowed to testify that he put Mr. Zabriskie's name through this ENPLEX database, and it came up that he was on a pill watch out of Pettis County Jail in Missouri. So it was objectionable on two grounds. One, it was improper other crimes evidence, propensity evidence, and two, it suggested that he had been in the county jail in Missouri, and defense counsel should have objected to that. The other thing that actually defense counsel recognized after the fact was during closing argument when the prosecutor was arguing that Caleb Colliver had told the jury that, Cody Zabriskie knows what I'm all about. He knows what I'm doing with drugs. He knows what I've always been doing. That wasn't objected to. But in the post-trial motion, defense counsel said, you know, that was being used as substantive evidence, but Mr. Colliver never admitted making that statement. He was impeached with it. Didn't the prosecutor even say that he made one statement with clarity while he was on the stand? Right. But it wasn't him that said it. No. It was the officer. Exactly. Exactly. And defense counsel after the fact in the post-trial motion said, this was not, well, defense counsel did tell the jury that wasn't Caleb Colliver, that was Inspector Pickett who claimed that Caleb Colliver made that statement. But he never asked that the jury be instructed to disregard or to not treat it as substantive evidence. And in rebuttal, the prosecutor again said, you heard what Inspector Pickett said. Cody Zabriskie knows all about what Caleb Colliver is doing, knows all about what he's doing with drugs. And at that point, the trial judge said, well, yeah, I agree. It shouldn't have been used for that purpose, but you never asked for limiting instruction. You didn't object to it at the time. So it was recognition that it came too late. Counselor, are you asking this court to reverse and remand for a new trial or just to outright reverse? Well, with respect to the first issue, we're just asking for an outright reversal because the state, and I think the state agrees, the state, because of the way they charged this, based on methamphetamine trafficking, they had to prove that this ammonia was brought into the state. And they didn't do that, so they didn't prove the underlying offense, so they didn't prove the conspiracy. Well, you say they didn't do that, but it seems to me that you're saying that they failed to do that only if we don't consider the tainted evidence. But doesn't the case law say that in order for this court to reverse outright without remanding, that this court can consider and should consider all of the evidence, even if tainted, in determining whether sufficiency of the evidence has been met? Well, even though, Your Honor, the tainted evidence itself also does not establish that part of the state's case, that it was brought into Illinois from out of state. Because Caleb Calver never said that he brought it into Missouri. There's no evidence that it was brought into Illinois from out of state. Well, the tainted evidence would be that he pled guilty to a charge which purportedly stated he brought the antivirus ammonia from Missouri into Illinois. And hence it's a conspiracy, hence he was conspiring with someone. So if the co-conspirator admitted, we'll call it an admission even though there's a real question there, that the antivirus was brought from Missouri into Illinois, therefore the inference would be that that part of the element of the state's case has been met. Well, our position is, even aside from Sullivan and Duff, that his guilty plea did not establish for purposes of Mr. Zabriskie's trial where that ammonia came from. His guilty plea just means that Mr. Calver cannot contest at any time in the future whether he brought it in or not, or what his intent was, or whether he was in a conspiracy. But in terms of proving Mr. Zabriskie's guilt, the fact that he pled guilty, to my mind, is just simply irrelevant. Okay, let me come at it from a different angle. There was a motion for a directed verdict at the close of the state's case which was denied, right? That motion for a directed verdict was not renewed by trial counsel at the close of all the evidence, nor was it made in a post-trial motion, is that right? Well, he did argue in a post-trial motion that the state did not prove Mr. Zabriskie guilty. He did argue that in a, I think it was a motion for judgment NOV and then a separate post-trial motion. Well, assume we agree with you that the motion for directed verdict could not have been denied based upon how it was presented to the trial court. Since that issue isn't preserved, we can't get there as a reviewing court unless we get there by plain error. Is that right? I'm not sure I'm... Well, it's waived unless we analyze it under plain error. The motion for directed... It's forfeited, I should say, more correctly. Right, he put on a defense after the motion for directed verdict was denied. But our position is beyond that. They never proved that element of the case that it came in from out of state and that the guilty plea didn't prove it because the guilty plea had nothing to do with Mr. Zabriskie himself. It only had to do with Mr. Colliver. Theoretically, maybe there were some statements Mr. Colliver made during his guilty plea that could have qualified as... But we don't know of any, do we? Right, no. The state didn't present any. The only thing we know is the fact of the guilty plea. Right, right. And so my position is that the guilty plea, it's not confident, it's not relevant, it doesn't apply to Mr. Zabriskie. Maybe statements he made, had there been some, could have been used as substantive evidence if the state proved they were there. Well, it may not be confident and it may not be relevant, but it was put into evidence and it was accepted by the trial court. And then it came into evidence through the defense. Right. Well, even, I was going to say, even the defense put it on, but put that on to show, look, Mr. Colliver is accepting responsibility for this offense. He's the one that committed the offense, not the defendant. You raised questions about the statements admitted as prior inconsistent statements. But even before they were, that issue came up during Pickett's testimony, the state failed to lay the proper foundation for the use of these. Colliver was never confronted with the statements he allegedly made to Pickett before Pickett was asked about them. He was asked in a very vague way about the statements and everyone seemed to assume he was talking about Mr. Zabriskie. Well, supposedly he was asked if he told, Colliver was asked if he told Inspector Pickett that the defendant knew what Colliver was all about. And Colliver responded, absolutely not. And then I think it's followed up by I think it went a lot more expansively than that. Oh, yeah. Talking about how he had a conversation, according to Pickett, with Colliver. And Colliver stated he couldn't remember a conversation he had, but he did say that the defendant knows what he's about, what he always does, and what he's always doing with the drugs. Colliver was never asked about those statements when he testified. And, of course, he couldn't be asked about those statements unless there was some kind of offer out of the presence of the jury made, because if it's denied, it's not admissible. These are C-2 statements. Could be admissible under C-2B under the statute if the witness acknowledges them, but you can't do that in front of the jury. It's like everyone involved here had only the vaguest familiarity with Illinois law and evidence. I would agree, Your Honor. There were all sorts of things that were brought in during Pickett's examination and Colliver's cross-examination that I just wasn't even sure where they were coming from, but they didn't go directly to whether Mr. Zabriskie was part of the conspiracy. You mentioned this earlier, but I want to make sure I understand your thoughts on it. What do you think the prosecutor was talking about when he asked the court to take judicial notice as part of the prima facie, as a prima facie case? What is that about? Well, reading it, I guess, in the most generous way I can, although I don't see really the motion for a directed verdict should have been granted then, but I assume what he was saying was kind of what he said in his closing argument that, hey, Caleb Colliver pled guilty to this conspiracy charge, the exact same charge we've charged Mr. Zabriskie with, and that requires, to prove that charge, we're required to show he brought it in from out of state, and since he pled guilty, then it just means that he is admitting he brought it in from out of state. I don't know. You've been at this a long time, counsel. Have you ever heard of a prosecutor asking the judge to take judicial notice in a jury trial and not tell the jury? Do you have any idea what that means? I have not. I was very flabbergasted when I saw that. I thought at some point they were going to put on some kind of evidence, but they never did. So, Your Honor, we would ask the conviction be reversed outright, or at least that he be given a new trial. Thank you, counsel. Do you want more time on rebuttal? Thank you. Ms. Miller? May it please the court, counsel. My name is Perry Miller, and I'm here on behalf of the state of Illinois. You have to speak up a little louder. That's just a recording, not an amplification. You'll have to speak up. I'm here. My name is Perry Miller. I'm here on behalf of the state of Illinois, representing the state in this matter. As far as the judicial notice that the state asked the court to take judicial notice of, the state stated and requested the court to take judicial notice of case number 12CF354. The state did state that it was for, to establish, felt that it needed to establish the element. You have to speak up louder. That the co-conspirator had brought into the state of Illinois anhydrous ammonia, which was one of the underlying elements of the defense. Defense counsel's response to that was that he did not believe that that could be used, but that the co-conspirator would be testifying. He would be able to testify to his omission. That is what defense counsel stated in the record. Defense counsel stated that he would be calling Culver as a witness and he would be able to testify to his omission. That's page 534 in the record. Then the state responded that it was a plea by the co-conspirator to the exact same charge, evidence for the element of bringing the anhydrous ammonia from Missouri to Illinois. The state asserted that it was going to use it for the limited purpose for the court to take judicial notice and not for the jury to hear. Not for the jury to hear in this jury trial? Yes. Is that when the prosecutor also spoke about making a prima facie case? The prosecutor later did state about making a prima facie case. Do you have any idea what he meant or what that even means? No, I don't. I believe that the state believed that there were necessary elements that it had to establish, but I can't say what the state meant by a prima facie case. Does the state concede under Sullivan that it was improper for the trial court to take judicial notice of the guilty plea? No, I would argue that it wasn't improper for the court to take judicial notice. Under Sullivan? Yes, under Sullivan to take judicial notice of the guilty plea. As substantive evidence of defendant's guilt is what I'm getting at. As Sullivan states, yes, that it would be to take judicial notice of the guilty plea. Sullivan found that it would deprive the defendant of a fair trial. But in the Sullivan case, the prosecutor argued the guilty plea several times throughout the case. He argued, the state, the prosecutor argued that in the opening argument that the two masked men, in the opening statement, the state would have an opportunity to hear from two men convicted of armed robbery of the same offense. Then he later called the two accomplices. The first accomplice, Matthew, in the Sullivan case, refused to testify. And the second accomplice did testify and was serving time for armed robbery, but he did not identify that the defendant was at the location. Then in the closing argument by the prosecutor, the prosecutor admitted all the evidence was circumstantial. And then the prosecutor argued that Matthew and Armstrong, the two accomplices, had played a major role. And based on the Sullivan case, the court found that the defendant's guilt had been based upon the co-defendant pleading guilty and convicted of the crime. And that it was reversible error because the prosecutor had argued the evidence to the jury. They failed to establish his guilt through Matthew or Armstrong, but urged the jury to still convict the defendant. There was no cautionary instruction and there was evidence of another guilt. But in the case here, there was evidence and the defense counsel did not. He called the co-conspirator to testify. And during that direct examination, the co-conspirator did testify that he had pled guilty to unlawful meth conspiracy. Specifically trafficking in high-risk ammonia. But he stated that he had pled guilty based on a convenience plea. But also the co-conspirator also talked about the different conduct that he engaged in. And when you look at all the facts, the circumstantial evidence, the jury could infer that the anhydrous was brought over from the state of Illinois. Can I interrupt you one second? The charge doesn't even charge him with bringing anhydrous from out of state. The charge, it charges that in there with the intent that the offense of methamphetamine trafficking in violation of the code be committed. Agree with another to commit that offense and commit it as an act in furtherance of that offense in that the defendant traveled from the state of Missouri to the state of Illinois. But it doesn't say in that he brought methamphetamine or precursors with him, right? It says to deliver anhydrous ammonia. Right. So he traveled from Missouri to Illinois to deliver. It doesn't say he transported it. It doesn't say he brought it with him like the statute requires. So what I want to know, and the plea that Colliver made was to that same charge. He was charged wrong too. He was charged the same way. So what is the circumstantial evidence in the record that supports a transportation of anhydrous from Missouri to Illinois? Well, the defendant testified to, the co-conspirator testified to different facts concerning the events on the day that he was charged with this offense. The evidence shows that in his truck he had numerous items that were related to methamphetamine trafficking. And that he had, he lived in Missouri. He had never been to Illinois, only twice. The one time he came over, that he came across the river just to make a batch of meth to smoke. And the last, the second time that he came over was when he engaged in the delivery of the anhydrous to the informant. So the evidence that you're relying on is that he traveled from Missouri to Illinois. And when he was in Illinois, items like anhydrous were found in his car. He testified, the defendant testified that he kept all these things, kept various things in his truck. He took it around. The co-conspirator, he testified that it was stuff stowed all throughout the truck that were related to methamphetamine production, manufacturing. The co-conspirator also testified to that he would travel three to four days a week up to Hannibal, Missouri and cook and make, manufacture methamphetamine. He also stated that he had been making this and stealing anhydrous since the age of 15. The fact that he spent the overwhelming majority of his life in Missouri, lived in Missouri, would go in Missouri and make the methamphetamine. And all of these different items were found in his truck. It's reasonable, too, that the jury could draw a conclusion that when he came over into Illinois, he already had the anhydrous. Also, it was found in a fire, a red fire extinguisher that had the word Springfield that had been painted over. And so, if you look at the fact that he spent his whole life and everything that he did was in Missouri, basically, and he only came to Illinois two times. It would be very, just the jury could definitely not believe that he did not come over into Illinois with the anhydrous. And also, when you look and you listen to his testimony about how he went one day after he had made a delivery the first time to the informant. He said that he went and just went out in a field and ended up getting this anhydrous. And then he took it, the first time he said he took it and he had put it in a bag and he went down a gravel road and then hid it over in some bushes. Later on, when, during his direct examination, he says that when he went to pick it up, he just leaned out the window, rolled the window, and just picked up the bag and left it on the side of the road. His story and how he did that just is not believable. Did the trial court err in denying the motion for a directed verdict? At the time the court was asked to grant the directed verdict, did the court err in denying it? In denying the directed verdict? At the end of the state's case, the defendant moved for a directed verdict because there was no evidence, except the judicially noticed guilty plea, that anhydrous had been transported from Missouri into Illinois. At that point in time, should the court have granted that motion for a directed verdict? The state would maintain, no, that the state, that the court, they were asked to take notice of the guilty plea. Okay, well, do you think that was correct? Was that a correct procedure? To take judicial notice of somebody else's guilty plea? The way, the manner, and the procedure that it was done, no. Okay, it wasn't correct. So, there was an objection made at that point, that was overruled. When they asked for a directed verdict, what evidence was in the record, other than the guilty plea that the court took notice of, to support that element of the offense? That would have been the asking for them to take, of the case file, and the case file with the court. Somebody else's case file? Okay, do you think that's proper, to use somebody else's case file as evidence against a different defendant? Is that a proper procedure? No, but in this case, when the defense counsel called the... I'm talking about before the defense counsel calls anybody. Because at the time he made the motion for a directed verdict, the defense case had not started. That's correct. So at the time he moved for a directed verdict, what admissible evidence was there in the record to support the state's element, that they had the burden of proving, that that anhydrous was brought from Missouri to Illinois? You had the testimony of Inspector Pickett that had testified regarding the transaction of the anhydrous. That is, that they had witnessed the co-conspirator, Colliver, come across that he had informed them that he was going to have a transaction, a buy, from a person for $2,000 for 5 gallons of anhydrous. The co-conspirator arrived in the truck along with the defendant and John Morton at the house. When they were doing surveillance, when they arrived at the informant's house, they first circled the block, and then they... ended up stopping inside the truck where all different types of various things was found inside the truck that was related to meth manufacturing. Well, all of that might support a charge of possession of methamphetamine or, you know, possession with intent to deliver. But what I'm getting at is, you have another element. Because of the... they dismissed how many charges? How many counts did they dismiss? And they left... they proceeded on one count, which inspired them to show that the anhydrous was brought from another state. So all of the things you said might be relevant to the other charges that were dismissed. But is there anything that you can give me to show they had any evidence, admissible evidence, to show that the anhydrous came from out-of-state into Illinois? Just that it was found in the truck, they had come, all three of them resided in Missouri. And the jury, at that point, that was the evidence. What about the Enflex stuff? Is that appropriate? The Enflex was testimony that was given regarding the investigation. Master Sergeant Frazier, who was the state expert, explained the investigative tools that the court... that they used in the case. And it was during that case, during that time, that he testified to the Enflex, which is a database that lists... that has a pill watch base to it. And then Inspector Pickett, when he was discussing the investigative tool, he was asked the question about what it had revealed. And in responding, what it had revealed, he stated that the next place had on it the defendant's name came up on a pill watch, and that it was from Pettis County Jail. And the state's position is that this was during a discussion, and that the defendant's name came up on a pill watch, and that it was from Pettis County Jail. And that's when they were testifying to the investigative procedure, but that the comments, if improper, it wouldn't be reversible. It was one isolated comment where Inspector Pickett stated that the defendant was in the Pettis County Jail on a watch list. Thank you. Thank you, counsel. Did your client get sentenced to impact incarceration? He did. And is he out already? He is out, yes. When your honors were asking about what evidence there was in the record to support a conclusion that this anhydrous ammonia came from Missouri to Illinois, I don't know if I misheard the counsel for the state, but there were several points she mentioned that are not in Mr. Zabriskie's record. So I don't know where this evidence is coming from. Maybe it's in Mr. Colliver's guilty plea record. I don't know. But counsel said that Mr. Colliver said he travels three to four days a week to Hannibal to make meth. He's been cooking meth since the age of 15, and that the way in which he picked up the meth from the field, leaned out of the window and picked it up, that that was unbelievable. I think I mentioned in my reply brief, too, there were mentions of that in the state's brief, but no record sites. I looked through the record. I could not find anything where Mr. Colliver's testifying to that in my client's case. So I would ask your honors not to consider that, because there is no evidence of that. Well, there is evidence that the original meeting between Cole and Colliver occurred in Missouri, correct? No, I believe that was at a gas station in Illinois. I thought that was in West Quincy. I'm not sure. I believe it is. I thought it was at a gas station in Quincy. Well, I'll have to look at that. I thought it was in West Quincy. Couldn't there be a reasonable inference being drawn that if the meeting between Cole and Colliver, which was confirmed on a video from the surveillance around the Airco gas station, occurred in Missouri and the deal was that Colliver was going to deliver anhydrous ammonia in Illinois in Quincy, wouldn't there be a reasonable inference that it was going to be brought across state lines from Missouri to Illinois? No, I don't believe it is. First of all, that's not even the transaction we're talking about here. When they met up at the gas station, and we don't even know what got exchanged at the gas station. All we know is from the police task force testimony was that Colliver and Cole had a meeting, but they couldn't see what was exchanged. All right, I'll have to check the facts. With respect to the judicial notice, looking at my notes, the prosecutor at the end of his case recognized he had not proven where this ammonia came from and brought out the file and said, I'm just asking the court to take judicial notice as evidence of the element that we have to prove that this was brought in from Missouri to Illinois defense counsel, kind of contributed to the problem by saying, well, as long as it's for a limited purpose, I want to make sure it's only used for that. What was the limited purpose? The limited purpose of what? The limited purpose of a prima facie case for the state's case in a jury trial. It was nonsensical, but our point is the state's case didn't get any better once the defense case was put on because then you had Caleb Colliver specifically saying, I didn't get that ammonia from Missouri, I got it in a farm near Marblehead, Illinois. So they never proved that this ammonia came from out of state. I do have copies of the charges too, and most of them, I think all of them in fact, allege methamphetamine trafficking in one form or another, either a conspiracy or straight methamphetamine trafficking. And some of the counts do allege that Mr. Zabriskie or one from his conduct, he's legally responsible, knowingly brought from the state of Missouri into the state of Illinois, and then they would allege. But the charge he was tried on just said they traveled from Missouri to Illinois. It did not include even the proper elements. So we are asking your honors to reverse Mr. Zabriskie's conviction outright. Any other questions? I don't think so. Thank you, counsel.